**[Cite as *State v. Coots*, 2015-Ohio-126.]**

IN THE COURT OF APPEALS FOR MIAMI COUNTY, OHIO

STATE OF OHIO                                   :

     Plaintiff-Appellee                      :              C.A. CASE NO.    2014 CA 1

v.                                              :              T.C. NO.    13CR282

JAMES R. COOTS                                  :              (Criminal appeal from
                                                               Common Pleas Court)

     Defendant-Appellant           :

                                                :

    . . . . . . . . . .

# **O P I N I O N**

Rendered on the _____16th_____ day of _____January_____, 2015.

. . . . . . . . . .

PAUL M. WATKINS, Atty. Reg. No. 0090868, Assistant Prosecuting Attorney, 201 W. Main Street, Safety Bldg., Troy, Ohio 45373
     Attorney for Plaintiff-Appellee

ROBERT L. MUES, Atty. Reg. No. 0017449 and A. MARK SEGRETI, JR., Atty. Reg. No. 0009106, 1105 Wilmington Avenue, Dayton, Ohio 45420
     Attorneys for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant James R. Coots appeals from his conviction and sentence for one count of aggravated robbery (deadly weapon), in violation R.C. 2911.01(A)(1), a felony of the first degree. Coots filed a timely notice of appeal with this Court on January 15, 2014.

{¶ 2} The incident which is the basis for the instant appeal occurred on June 29, 2013, at approximately 8:43 p.m. when Miami County Sheriff's Deputies were dispatched to a robbery in progress at the Stone Circle Drive Thru located at 2858 S. Co. Road, 25A, in Troy, Ohio. Upon their arrival at the drive thru, the deputies spoke with the owner and victim of the robbery, Doris Meyers, who was eighty years old at the time. Meyers informed the police that a middle-aged white male, later identified as Coots, entered the drive thru on foot from the overhead garage door on the west side of the business. Meyers testified that she was able to tell where Coots had entered the business because of motion sensors placed at the entrances and exits which allowed her to discern when customers arrive at and/or leave the drive thru. Meyers further testified that she sold beer, wine, grocery items, and lottery tickets at her drive thru.

{¶ 3} Meyers came into contact with Coots near the office door located at the east section of the drive thru. Meyers testified that Coots was wearing grey sweat pants, a grey shirt, and a grey sweatshirt with a hoodie. Coots had pulled on the hood which partially obscured his head. Upon asking Coots if she could help him, he stated, "Give me your money." Initially, Meyers refused to hand over any money to Coots. At that point, Coots pulled up his sweatshirt and revealed that he had what appeared to Meyers to be a knife

stuck in the waistband of his sweat pants. Meyers testified that only the handle was visible as it protruded from Coots' waistband, but she knew it was a knife. Coots demanded money again, but Meyers told him that he would have to take it. Coots then opened up the cash drawer that contained lottery prize money and removed all of the currency therein. Coots also took a single lottery ticket that had been placed inside the cash drawer. Coots stuffed the money and ticket into his pockets, ran out of the drive thru, entered a vehicle parked in front of S&R Goldsmith Jewelry, a store located next door to the drive thru, and drove away.

{¶ 4} During their investigation, Miami County Sheriff's deputies came into possession of surveillance camera videos which depicted Coots, as well as the vehicle he used to drive away from the scene. The videos did not present a clear picture of Coots' face. The vehicle, however, had many distinctive features including a missing front license plate, a low hanging tail pipe, and white tape on the front passenger side light and turn signal. Tipp City Police Sergeant Chris Graham, who was familiar with the investigation, observed the vehicle approximately a week after the robbery. Sgt. Graham contacted Detective Stephen Hickey from the Miami County Sheriff's office regarding his discovery. Shortly thereafter, the vehicle was found to be registered to Coots. Det. Hickey testified that he ran Coots' name through the Sheriff's Department database which provided his photo and physical description which matched the individual depicted in the surveillance video. The police contacted Coots and interviewed him at the station where he denied any involvement in the robbery. Nevertheless, Coots was arrested and charged with aggravated robbery.

**{¶ 5}** Coots was indicted on one count of aggravated robbery with a deadly weapon on August 15, 2013. At his arraignment on August 26, 2013, Coots pled not guilty and was released on his own recognizance with the restriction that he not visit nor have any contact with the Stone Circle Drive Thru or its employees. On September 17, 2013, Coots filed a motion in limine requesting that the trial court limit or bar the State from using the testimony of any police officer to identify him from surveillance videos or still photographs. The State filed a memorandum in response to Coots' motion in limine on October 11, 2013. On October 21, 2013, the trial court denied Coots' motion in limine.

**{¶ 6}** On December 3, 2013, the case proceeded to jury trial. Coots presented an alibi defense at trial, wherein he asserted that he was watching a Nascar race with his girlfriend, Lisa Bryant, and his friend, Robert Davis, when the robbery occurred. Davis testified on behalf of Coots at trial. Bryant did not testify. Coots was found guilty of the sole count in the indictment on December 5, 2013. On January 13, 2014, the trial court sentenced Coots to eleven years in prison, the maximum sentence available for aggravated robbery with a deadly weapon.

**{¶ 7}** It is from this judgment that Coots now appeals.

**{¶ 8}** Coots' first assignment of error is as follows:

**{¶ 9}** "THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION DENYING APPELLANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY ALLOWING POLICE WITNESS MOORE TO TESTIFY DENYING THE RIGHT TO CROSS-EXAMINATION; AND OTHERS TO TESTIFY ABOUT RECORDING."

{¶ 10} In his first assignment, Coots contends that the trial court erred when it permitted Sgt. Jason Moore to testify at trial. Sgt. Moore positively identified Coots as the individual caught by surveillance cameras arriving at and then leaving the scene of the robbery at the drive thru. Although it was impossible to see the individual's face from the surveillance footage, Sgt. Moore was able to identify Coots by his gait, posture, and overall appearance. Sgt. Moore testified that he had "worked with" Coots on several police investigations in the two years prior to the trial. From his close contact with Coots, Sgt. Moore testified that he had become very familiar with Coots' physical mannerisms, as well as the sound of his voice. On appeal, Coots argues that Sgt. Moore's testimony was unfairly prejudicial because it implied that he was a convicted criminal. Coots also argues that Sgt. Moore was not qualified under Evid. R. 701 to provide his lay opinion testimony that Coots was, in fact, the individual depicted in the surveillance footage.

{¶ 11} Initially, we note that Coots argues that the trial court unfairly limited his ability to effectively cross-examine by allowing Sgt. Moore to identify him as the suspect in the surveillance footage by his physical attributes, namely his gait and posture.[1] Thus, Coots asserts that the trial court violated his right to confront the witnesses who testified against him. In support of his argument, Coots points out that his trial counsel declined to cross-examine Sgt. Moore when the opportunity arose after the State concluded its direct examination of the witness.

{¶ 12} Sgt. Moore's testimony identifying Coots by his gait and posture was clearly damaging to his alibi defense, inasmuch as it implicated Coots in the robbery of the drive

---

[1]A review of the surveillance video and still photos reveals a larger bald man, who would appear

thru. Nevertheless, the record fails to support Coots' claim that the trial court limited his ability to cross-examine Sgt. Moore in any way. Coots' counsel was given the opportunity to cross-examine Sgt. Moore, but for unknown reasons, declined to do so. Simply put, the record does not support Coots' claim that his right to confront Sgt. Moore through cross-examination was violated.

{¶ 13} Evid.R. 403(A) provides: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury." This rule "manifests a definite bias in favor of the admission of relevant evidence, as the dangers associated with the potentially inflammatory nature of the evidence must substantially outweigh its probative value before the court should reject its admission." *State v. White*, 4th Dist. Scioto No. 03CA 2926, 2004-Ohio-6005, ¶ 50. Thus, "[w]hen determining whether the relevance of evidence is outweighed by its prejudicial effects, the evidence is viewed in a light most favorable to the proponent, maximizing its probative value and minimizing any prejudicial effect to the party opposing admission." *State v. Lakes*, 2d Dist. Montgomery No. 21490, 2007-Ohio-325, ¶ 22. In addition, trial courts have broad discretion in admitting evidence, and their decisions will not be overturned absent an abuse of discretion and material prejudice to the defendant. *State v. Taylor,* 2d Dist. Montgomery No. 20944, 2006-Ohio-843, ¶ 58, citing *State v. Maurer*, 15 Ohio St.3d 239, 264-265, 473 N.E.2d 768 (1984).

{¶ 14} Coots argues that "any discussion of how Sgt. Moore was familiar with [him] necessarily would lead to the conclusion or inference that he had a criminal record."

---

readily identifiable to those who were acquainted with him.

Therefore, Coots asserts that the probative value of Sgt. Moore's testimony was substantially outweighed by the prejudicial effect it had on his case. Upon being questioned by the State, Sgt. Moore provided the following testimony regarding how he came to know Coots:

The State: And through the course of your experience and your employment with the Sheriff's Office, are there occasions where citizens or members of the public sometimes assist the police in investigations?

Sgt. Moore: Yes[;] it happens all the time.

\*\*\*

Q: And have you had opportunity in your employment with the Sheriff's Office to have the assistance of [Coots] in police investigations?

A: Yes.

Q: And how long have you actively worked with him on police investigations?

A: Approximately two years.

Q: Okay[,] and in the course of that employment and that assistance from the defendant in your investigations, did you have the opportunity to spend time with the defendant face to face?

A: Yes.

Q: And did you have time or opportunities during those investigations to observe the defendant's appearance?

A: Yes.

Q: Did you have an opportunity to deserve – observe his – his

mannerisms?

A: Yes.

Q: How about his posture?

A: Yes.

Q: Have you had the opportunity to observe how – how he walks or how his carriage – how he carries himself?

A: Yes.

Q: Okay and have you also had the opportunity to – to either speak with him on the phone directly or hear the sound of his voice over the telephone or a recording device?

A: Yes.

Q: And is – having had that experience, would you recognize his voice if you heard it on a recording?

A: Yes[,] I believe so.

{¶ 15} In support of his argument that he was prejudiced by Sgt. Moore's identification testimony, Coots cites to *United States v. Calhoun*, 544 F.2d 291 (6th Cir.1976), wherein the Sixth Circuit Court of Appeals reversed a conviction because the trial court allowed the defendant's parole officer to testify for the sole purpose of identifying the defendant in a photograph. The Sixth Circuit held that "under the unique circumstances of the case, the defendant was illegitimately deprived of the right to cross-examine the witness." *United States v. Maddox*, 944 F.2d 1223, 1231 (6th Cir.1991), distinguishing *Calhoun*, 544 F.2d 291. The *Calhoun* court reasoned that if the jury found out about the

nature of the relationship between the two of them, the jury could infer that the defendant had a prior criminal record. Thus, because of the preexisting relationship between the two, the defendant would have to delve into highly prejudicial matters in order to explore possible motives that his former parole officer might have had in identifying him.

{¶ 16} The instant case, however, is distinguishable from *Calhoun* insofar as Sgt. Moore was not Coots' parole officer. Significantly, Sgt. Moore merely testified that he "worked with" Coots on several criminal investigations of other individuals over a period of approximately two years. Moreover, it is not uncommon for citizens to aid police in the apprehension of criminals. Conversely, parole officers, like the individual in *Calhoun*, only supervise men and women who have been convicted of a crime. Simply put, there is nothing in Sgt. Moore's limited testimony whereby the jury could conclude or infer, directly or tangentially, that Coots had a prior criminal record. The only non-speculative conclusion that can be drawn from Sgt. Moore's testimony is that Coots may have had a history of cooperation with the Miami County Sheriff's Office. Accordingly, the probative value of Sgt. Moore's testimony substantially outweighs any danger of any prejudice to Coots.

{¶ 17} Lastly, Coots argues that the introduction of Sgt. Moore's identification testimony under Evid. R. 701 was improper because the surveillance videos did not reveal the perpetrator's face. Additionally, Coots asserts that Sgt. Moore's testimony of viewing the appellant while working with him on criminal investigations was not sufficient to permit an opinion as to the identity of the perpetrator from the video based on his gait and posture (i.e. overall appearance).

{¶ 18} Evid.R. 701 states: "If the witness is not testifying as an expert, the witness'

testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶ 19}  Sgt. Moore was testifying as a lay witness, but his testimony was based on his personal observation of Coots' general physical mannerisms over a period of two years. Pursuant to Evid. R. 701, Sgt. Moore's testimony was rationally based upon his own personal observations of Coots' appearance, gait, and posture over a significant period of time.  Although the details of Coots' face were blurry in the videos, Sgt. Moore specifically testified that he was sufficiently familiar with the appellant's gait and posture that he could make a positive identification.  The State submitted the surveillance videos depicting Coots arriving at and leaving the scene of the robbery, and the jury could have reasonably determined for itself whether Sgt. Moore's identification of Coots as the perpetrator was reasonable under the circumstances.  Thus, we find no error in the admissibility of Sgt. Moore's testimony regarding Coots' identification based on his physical mannerisms depicted in the surveillance videos.

{¶ 20}  Finally, Coots argues that the surveillance footage from S&R Goldsmith Jewelry, located next to the Stone Circle Drive Thru, was not properly authenticated at trial, and was therefore inadmissible.  Coots also argues that it was error for the trial court to admit a recording of his voice wherein he makes incriminating statements because the recording was also not properly authenticated.  We note that Coots failed to object to introduction of the surveillance footage and the voice recording during trial, so all but plain error has been forfeited. *State v. Lott*, 51 Ohio St.3d 160, 167, 555 N.E.2d 293 (1990).  In

fact, the trial court specifically asked Coots' counsel if he wanted to object to the admission of the videos and the voice recording, but he declined to do so.

{¶ 21} For plain error to exist, the defect in the trial proceedings must be obvious and must have affected the outcome of the trial. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16. "Notice of plain error 'is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 22} "Evid.R. 901(A) requires, as a condition precedent to the admissibility of evidence, a showing that the matter in question is what it purports to be." *State v. Simmons*, 2d Dist. Montgomery No. 24009, 2011-Ohio-2068, ¶ 12. The threshold standard for authenticating evidence is low, *State v. Wiley*, 2d Dist. Darke No. 2011 CA 8, 2012-Ohio-512, ¶ 11, and Evid.R. 901(B) provides examples of numerous ways that the authentication requirement may be satisfied. The most commonly used method is testimony that a matter is what it is claimed to be under Evid.R. 901(B)(1). *Royse v. Dayton*, 195 Ohio App.3d 81, 2011-Ohio-3509, 958 N.E.2d 994, ¶ 27 (2d Dist.).

{¶ 23} During trial, the State presented the testimony of Kenneth VanDyke, an employee at Securest Technologies, who testified regarding the authenticity of the voice recording of Coots while incarcerated. Securest Technologies is a company that records and maintains conversations of inmates on phones located in jails and prisons. VanDyke testified that the recording of a telephone call made while Coots was incarcerated in the

Miami County Jail was recorded and maintained in the regular course of business by Securest, thus authenticating the recording. Sgt. Moore testified that he recognized Coots' voice on the recording from his dealings with the appellant over the past two years. In the recorded call, Coots made incriminating statements.

{¶ 24} With respect to the surveillance videos depicting Coots arriving at and leaving the business, the State presented the testimony of Hasson Lowry, a technical representative from the Ohio Attorney General's Bureau of Criminal Investigations (BCI). Lowry testified that he was asked by the Miami County Sheriff's Office to review and enhance the images from the video files retrieved from the surveillance cameras at the drive thru and the jewelry store on the day of the robbery. Lowry unequivocally testified that the video files that were used as exhibits at trial were the same files that he received from the Miami County Sheriff's Office. Moreover, Sgt. Hickey testified that the videos depicting Coots were the same videos taken from the surveillance cameras at the drive thru and jewelry store on the day of the robbery. Further, Sgt. Moore positively identified Coots as the individual depicted in the videos based on his physical mannerisms. Accordingly, the surveillance videos were properly authenticated before their admission into evidence pursuant to Evid. R. 901(A).

{¶ 25} Coots' first assignment of error is overruled.

{¶ 26} Coots' second assignment of error is as follows:

{¶ 27} "THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN ALLOWING IDENTIFICATION TESTIMONY WHERE THE STATE REQUESTED THE VICTIM TO IDENTIFY THE OFFENDER BASED ON THE POLICE

COMMUNICATION THAT THE SUSPECT HAS BEEN ARRESTED AND HER SEEING HIM ON TELEVISION WHICH IS UNDULY SUGGESTIVE AND TOO LIKELY TO RESULT IN AN INCORRECT IDENTIFICATION."

**{¶ 28}** In his second assignment, Coots argues that Meyers' testimony identifying him as the individual who robbed the drive thru was unreliable and should have been stricken from the record. Specifically, Coots asserts that Meyers testified that she could not identify him from her own recollection of the robbery. Coots argues that Meyers could only identify him after seeing a photograph of him on television and after being shown a picture by the police well after the robbery occurred.[2]

**{¶ 29}** Again, we note that Coots' counsel failed to object to Meyers' identification testimony at trial. Thus, we review this assignment under a plain error standard. To constitute plain error, the court must find that, but for the error, the outcome of the trial clearly would have been otherwise. *Payne*, at ¶ 16. "Notice of plain error 'is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Lang*, at ¶ 108.

**{¶ 30}** At trial, Meyers gave the following testimony during her direct examination by the State:

The State: Okay. If you can tell the Jury, what did – what did that person who came in there and threatened you with that knife and took your money, what did they look like?

Meyers: Well he was – all I could see he had a hooded sweatshirt on,

---

[2]We note there is nothing in the record which supports an assertion that the police presented

and he was white, and a round face.

Q: Okay.

A: And he had sweat pants on; I thought that's what they were, and a sweatshirt.

Q: And do you remember what color those sweat pants and sweatshirt were?

A: They were either – they were gray, but they weren't matching gray.

Q: Okay.   So two different shades of gray.

A: Right.

Q: Okay and were you able to see about how – how old he was or if he was younger or older.

A: I was [sic] guess around fifty, but that's what I was guessing.

Q: Okay.   And you said that he had a hood up.

A: Uh huh.

Q: *Were you still able to see his face though, even with the hood up?*

A: *His face yes, the roundness of his face and all, yes.*

Q: Okay.   And Ms. Meyers let me ask you, if you could take a look around in the courtroom today, and tell me do you see the person that came into your store and robbed you that night here in the courtroom?

A: Yes.

Q: Okay.   And if you can tell me where he's sitting

---

Meyers with a solitary photo of Coots.

and what he's wearing.

\*\*\*

A: Well his – here we got – he's got the light gray or what pants on and a burgundy shirt or lavender whichever way you want it, and he's got the mustache and all –

Q: Okay.

A: – and a round face.

Q: Okay.   And if you can go ahead and just – can you point to him?

A: Right there.

Q: Okay.   I'd ask that the record reflect the witness has identified the defendant.

The Court: Record will so reflect.

The State: Thank you.   And ma'am, how can you be sure that he's the person you saw that night?   What is it about his appearance here today that makes you sure?

Meyers: The round face is what got me and I didn't see any of the photos that was on TV till the last one, and behind there was one that they had put two on, and it – it was him definitely.   It was the roundness of his face, the whole bit.

Q: Okay.   Okay.   And I want to make sure that the person you remember in your store –

A: Uh huh.

Q: – that night on June 29th, is that person you remember the same person that you see for us today and you identified for us?

A: Yes.

Q: Okay. *And not necessarily what you saw on TV but what you remember from the night of the robbery.*

A: Right.

Q: Is that the same person?

A: Right that's the same person.

{¶ 31} The record does not support Coots' argument that Meyers could not identify him as the perpetrator until she saw his photograph on television after he was arrested. Meyers testified at trial that she was able to clearly observe Coots' face, approximate age, build, and clothing during the robbery. Sgt. Chris Bobb testified that when Meyers called 911 to report the robbery right after it occurred, she was able to provide a physical description of Coots that matched the description she provided at trial. Upon observing a photograph of Coots on television, Meyers' testimony suggests that she recognized him as the man who robbed the drive thru. The record does not support Coots' argument Meyers' identification testimony was based on what she saw on television. Rather, her testimony suggests the identification was based on her own personal recollection of Coots as the individual who robbed the store. By all indications, the photograph Meyers observed on the television merely reinforced her own personal recollection of Coots' physical description. Plain error has, therefore, not been established.

{¶ 32} Coots' second assignment of error is overruled.

{¶ 33} Coots' third assignment of error is as follows:

{¶ 34} "THERE WAS INSUFFICIENT COMPETENT EVIDENCE THAT THE OFFENDER POSSESSED OR DISPLAYED A KNIFE AT THE TIME OF THE THEFT OR THAT THE KNIFE WAS USED AS A DEADLY WEAPON, OR SUCH EVIDENCE WAS NOT CREDIBLE AND CONTRARY TO THE GREATER WEIGHT OF THE EVIDENCE."

{¶ 35} In his third assignment, Coots contends that the evidence was insufficient to establish that Coots possessed or displayed a knife during the robbery of the drive thru. Coots further argues that if we determine that he did, in fact, have a knife during the robbery, that he did not use the knife as a deadly weapon.

{¶ 36} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on one or more elements of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), at paragraph two of the syllabus.

{¶ 37} In the instant case, Coots was convicted of aggravated robbery,  in violation of R.C. 2911.01(A), which provides that "[n]o person, in attempting or committing a theft

offense, ***, or in fleeing immediately after the attempt or offense, shall *** [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" In support of his sufficiency-of-the-evidence argument, Coots argues, alternatively, (1) that there was no knife, or (2) that the knife was not a deadly weapon.

{¶ 38} Viewing the evidence in a light most favorable to the State, however, we conclude the prosecutor presented legally sufficient evidence to sustain Coots' conviction. First, Meyers testified that when she initially refused to hand over any money from the register, Coots pulled up his sweatshirt and displayed a weapon sticking in the waistband of his sweat pants. Although Meyers conceded that she did not observe the blade, she recognized the object being shown to her by Coots as a knife. Therefore, the jury reasonably could have found there was a knife. Second, Coots did not display the knife until Meyers refused to hand over the money, the implication being that he would use the knife to hurt her if she did not comply with his demands. The facts of the instant case are analogous to the facts in *State v. Potchik*, 2d Dist. Montgomery No. 23865, 2011-Ohio-501, wherein we upheld the appellant's conviction for aggravated robbery. In *Potchik*, the victim of the robbery testified that the defendant lifted his shirt and showed the handle of a gun at the same time that he demanded money from her. Although the victim only observed the handle, she "assumed" it was a gun, and we concluded that the "jury's decision to credit [her] testimony concerning the gun was reasonable." *Id*. at ¶ 35. Clearly, the evidence supports a finding that the object was a "deadly weapon," and the jury could reasonably infer, as did Myers, that the object was a knife.

{¶ 39} We previously addressed the issue of a knife qualifying as a deadly weapon for purposes of a felonious assault conviction in *State v. Schooler*, 2d Dist. Montgomery No. 19627, 2003-Ohio-6248. There we stated:

We agree with Defendant that knives are generally not presumed to be deadly weapons. Instead, the State has the burden to prove that the knife meets the statutory definition of deadly weapon set out in R.C. §2923.11.

The definition of deadly weapon in R.C. §2923.11(A) imposes two requirements of proof. First, the article must be capable of inflicting death. Second, the article must either (1) have been designed or specially adapted for use as a weapon or (2) possessed, carried, or used as a weapon. Either alternative branch of the second requirement can be employed to prove the proposition. When use is a factor, the manner of its use and the nature of the instrument itself determines its capacity to inflict death.

{¶ 40} Upon review, we conclude that the State adduced sufficient evidence to establish all of the elements of aggravated robbery. Specifically, the State presented sufficient evidence to support a finding that Coots possessed, carried, or used a knife during the commission of the robbery of Meyers' drive thru.

{¶ 41} Coots' third assignment of error is overruled.

{¶ 42} Coots' fourth assignment of error is as follows:

{¶ 43} "THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING THE STATE TO INTRODUCE EVIDENCE OF A KNIFE NOT CONNECTED TO THE ROBBERY AND ALSO THE LACK OF FINGERPRINT EVIDENCE RELATED TO

ACCUSED."

{¶ 44} In his fourth assignment, Coots argues that the trial court abused its discretion when it admitted a knife retrieved from his home. Coots argues that Det. Hickey testified that the police did not know whether the knife taken from his house was the knife used in the robbery at the drive thru. Thus, Coots argues that the knife found in his home should have been excluded. Coots also asserts that the trial court erred when it failed to exclude any evidence or testimony regarding fingerprint gathering methodology because the police were unable to find any fingerprint evidence linking Coots to the robbery. At trial, Coots failed to object to the admission of the knife and the testimony regarding fingerprinting analysis. Therefore, he has waived all but plain error in regards to this assignment of error.

{¶ 45} Coots argues that the knife admitted by the trial court was irrelevant pursuant to Evid. R. 401 because Det. Hickey testified that the police did not know whether it was the knife used in the robbery. Coots also argues that the knife was improper "other acts" evidence in violation of Evid. R. 404(B). Evid. R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

{¶ 46} In support of his argument that the trial court abused its discretion by admitting the knife, Coots cites *State v. Heyder*, 10th Dist. Franklin No. 13AP-298, 2014-Ohio-1066. In *Heyder,* the Tenth District Court of Appeals reversed the appellant's conviction for aggravated robbery, finding that the trial court erred when it admitted

evidence of a knife that the victim testified was *not* the knife used in the robbery. *Id*. at ¶ 19. The court further stated that evidence of a knife not involved in the robbery "could suggest that appellant is a dangerous person who carries a knife and that he could have used a knife, albeit a different knife, during the robbery.   This is prejudicial." *Id*.

{¶ 47}   We agree that the knife found in Coots' home seemingly lacked probative value after Det. Hickey testified that the police did not know if it was the knife used in the robbery of the drive thru.   However, the knife seized from Coots' home was not shown to Meyers, the victim of the robbery.   Unlike the victim in *Heyder*, Meyers did not testify that the knife was *not* the weapon used in the robbery.   Meyers was not even questioned about nor shown the knife when she testified.   Thus, it is unclear as to whether her description of the handle matches the knife recovered at Coots' residence.

{¶ 48}   In order to prevail under a plain error analysis, Coots bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the errors. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978); Crim R. 52(B).   Notice of plain error "is taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id*. at ¶ 3 of the syllabus, 372 N.E.2d 804.

{¶ 49}   In our view, any prejudice resulting from the trial court's admission of the knife into evidence was minimal.   Det. Hickey testified at length during his cross-examination that the police were unable to determine whether the knife taken from Coots' home was the same knife used in the robbery.   However, unlike the victim in *Heyder*, Meyers was not asked about the knife at trial.   Nevertheless, Meyers unequivocally asserted that she saw a handle and concluded that Coots possessed a knife.

{¶ 50} Morever, the State adduced sufficient admissible testimony at trial to support Coots' conviction for the indicted offense. Meyers positively identified Coots as the individual who robbed her store. Surveillance videos outside the drive thru and an adjoining business recorded footage of Coots arriving at and leaving the drive thru at the time of the robbery. Sgt. Moore positively identified Coots as the individual depicted in the surveillance videos based on his physical appearance and mannerisms. Coots' car was, without question, the motor vehicle that the perpetrator arrived in and fled in after the robbery occurred. The evidence also established that a call was placed from Coots' cell phone to a telephone at the drive thru moments before the robbery occurred. Sgt. Moore identified Coots' voice on a jail phone call recording wherein he made incriminating statements. The evidence of Coots' guilt was substantial. Meyers' observation of a handle protruding from Coots' waistband leads to a reasonable conclusion that he was displaying a knife to effectuate the robbery. Thus, we cannot say exclusion of the recovered knife would have changed the outcome of the trial.

{¶ 51} We also conclude that the trial court did not err, plainly or otherwise, when it admitted testimony regarding the Miami County Sheriff's Office fingerprinting methodology. This testimony lacked any probative value as Det. Hickey admitted that Coots' fingerprints were not lifted from any of the items that were analyzed. In short, Coots was not prejudiced by the admission of the fingerprint testimony.

{¶ 52} Coots' fourth assignment of error is overruled.

{¶ 53} Coots' fifth assignment of error is as follows:

{¶ 54} "THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN

FAILING TO INSTRUCT THE JURY ON LESSER INCLUDED OFFENSES; AND ALSO ON HOW TO ASSESS IDENTIFICATION EVIDENCE."

**{¶ 55}** In his fifth assignment, Coots argues that the trial court erred when it failed to instruct the jury on the lesser included offenses of theft and/or robbery. Coots also contends that the trial court erred when it failed to instruct the jury on the issue of eyewitness identification pursuant to *United States v. Telfaire*, 469 F.2d 552, 558-59 (D.C.Cir.1969).

**{¶ 56}** In *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), the Ohio Supreme Court set out a three-part test to be used in determining whether one offense constitutes a lesser included offense of another:

> An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense.

**{¶ 57}** Theft, as defined in R.C. 2913.02(A), is not a lesser included offense of aggravated robbery as defined in R.C. 2911.01(A)(1), because aggravated robbery can be committed without theft also being committed. *State v. Carter*, 89 Ohio St.3d 593, 600-601, 734 N.E.2d 345 (2000). This is true because aggravated robbery can be committed in the course of an attempted theft. Thus, the second prong of the *Deem* test is not satisfied. Because theft is not a lesser included offense of aggravated robbery, the trial court did not err in failing to provide the jury an instruction on theft.

**{¶ 58}** Robbery, as defined in R.C. 2911.02(A)(1), is a lesser included offense of

aggravated robbery as defined in R.C. 2911.01(A)(1). *State v. Woods*, 2d Dist. Montgomery No. 19005, 2002-Ohio-2355. "The difference between the two crimes is that aggravated robbery also requires that the offender 'either display the weapon, brandish it, indicate that the offender possesses it, or use it.' R.C. 2911.01(A)(1)." See *State v. Gooden*, 2d Dist. Montgomery No. 19231, 2003-Ohio-905, ¶ 42.

**{¶ 59}** The Supreme Court of Ohio has stated that if the evidence presented at trial reasonably supports both an acquittal on the charged crime and a conviction on a lesser included offense then an instruction on the lesser included offense is required. *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988); *Gooden* at ¶ 40, citing *State v. Kilby*, 50 Ohio St.2d 21, 24-25, 361 N.E.2d 1336 (1977). However, if the jury could not reasonably find against the state on any element of the charged crime, then an instruction on a lesser included offense is improper. *Gooden* at ¶ 40. Moreover, a trier of fact will not be allowed to consider a lesser included offense when the evidence adduced on behalf of the defense is such that, if accepted by the trier of fact, the evidence would constitute a complete defense to all substantive elements of the crime charged. *Id.* at ¶ 39; *State v. Nolton*, 19 Ohio St.2d 133, 249 N.E.2d 797 (1969).

**{¶ 60}** Coots attempted to undermine Meyers' testimony in which she identified him as the perpetrator of the robbery. Coots also challenged Meyers' testimony that she observed a knife in the waistband of his sweat pants. Furthermore, Coots presented an alibi defense at trial. Simply put, Coots argued that he was not the individual who committed the aggravated robbery of the drive thru since he claimed that he was at home watching a Nascar race and drinking beer with his girlfriend and friend. This alibi evidence, if accepted by the

trier of facts as true, would require an acquittal of any offense relating to the aggravated robbery of the drive thru.

{¶ 61} Additionally, the evidence presented at trial established that whoever robbed Meyers did so by "displaying or brandishing" a deadly weapon: to wit, a knife. Thus, the evidence presented at trial is such that the jury could not reasonably find against the State on any element of aggravated robbery. See *Gooden,* ¶ 42. Because the evidence presented did not warrant a jury instruction on the lesser included offense of robbery, the trial court did not err by failing to sua sponte give that instruction.

{¶ 62} The decision of whether to give a *Telfaire* instruction is a matter within the sound discretion of the trial court that depends "in large measure on whether a resolution by the jury of the disputed issues in the case requires or will be clearly assisted by the instruction." *State v. Guster*, 66 Ohio St.2d 266, 271, 421 N.E.2d 157 (1981); *State v. Blackburn*, 2d Dist. Greene No. 97 CA 100, 1998 WL 543336 (Aug. 28, 1998). The Ohio Supreme Court has held:

> A trial court is not required in all criminal cases to give a jury instruction on eyewitness identification where the identification of the defendant is the crucial issue in the case and is uncorroborated by other evidence. A trial court does not abuse its discretion in deciding that the factual issues do not require, and will not be assisted by, the requested instructions, and that the issue of determining identity beyond a reasonable doubt is adequately covered by other instructions.

*Guster*, supra, at syllabus.

**{¶ 63}** The trial court gave the following instruction with respect to witness testimony:

> The Court: You are the sole judges of the facts, the credibility of the witnesses and the weight of the evidence. Accordingly, you have the sole and exclusive duty to decide the credibility of the witnesses who testified here. This simply means that it is you who must decide whether to believe or disbelieve a particular witness.
>
> In making this determination, you will apply the tests of truthfulness that you apply in you daily lives. *These tests include the appearance of each witness on the stand; his or her manner of testifying; the reasonableness of the testimony; the opportunity the witness had to see, hear and know things concerning which he or she testified; the accuracy of the witness' memory; frankness or lack of it; intelligence; interest and bias, if any; with all the facts and circumstances surrounding the testimony.* (Emphasis added)

**{¶ 64}** Initially, we note that the instruction given by the trial court conformed to the Ohio Jury Instructions as they pertain to the credibility of witnesses. We also note that Coots did not request the *Telfaire* instruction. Moreover, Coots did not object to the trial court's failure to give the instruction sua sponte. Thus, the trial court's failure to give such an instruction is reviewed under the plain error standard.

**{¶ 65}** In support of his argument that the *Telfaire* instruction should have been given by the trial court, Coots asserts that Meyers, the owner of the drive thru, could not identify him at trial. Coots' assertion clearly mischaracterizes the record with respect to

Meyers' testimony. As previously discussed, Meyers positively identified Coots as the perpetrator of the aggravated robbery. Meyers identified Coots by build, age, gender, facial features, and the clothing he was wearing. Sgt. Moore also recognized Coots along with his vehicle. Upon review, we cannot say, but for the inclusion of the *Telfaire* instruction, the outcome of the trial would have been different.

{¶ 66} Coots' fifth assignment of error is overruled.

{¶ 67} Coots' sixth assignment of error is as follows:

{¶ 68} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL; ERRORS WERE NOT HARMLESS."

{¶ 69} In his sixth assignment, Coots contends that his trial counsel was deficient for: 1) failing to challenge the identification process prior to trial; and 2) failing to object to the admission of the unrelated knife into evidence at trial.

{¶ 70} As this Court noted in *Strickland v. Washington*, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), "the proper standard for attorney performance is that of reasonably effective assistance. * * *." *Id.*, 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. * * *." *Id.*, 691. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. * * *." *Id.*, 693. The *Strickland* Court further noted, "[o]n the other hand, we believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be

shown by a preponderance of the evidence to have determined the outcome." *Id*., 694. Finally, the Court in *Strickland* determined that to establish ineffective assistance, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

{¶ 71} Coots asserts that his counsel was ineffective for failing to argue that there was no evidence of what was actually in his waistband when he robbed the drive thru. Coots points out that his counsel conceded that there was a knife even though Meyers testified that she "just assumed" it was a knife from the handle protruding from appellant's waistband. As we previously discussed, the State adduced sufficient evidence at trial that Coots possessed and displayed a knife to Meyers when he robbed the drive thru. Moreover, Coots' defense at trial was an alibi and focused on his argument that he was not the individual who robbed her store. During Meyers' cross-examination, defense counsel questioned her extensively regarding her ability to correctly recall Coots' physical characteristics. It may have been a matter of trial strategy that defense counsel did not challenge Meyers' testimony regarding the presence of a knife because it was immaterial to Coots' alibi defense. We cannot say that defense counsel was ineffective for failing to challenge Meyers' testimony that Coots displayed a knife when he robbed the drive thru.

{¶ 72} Coots argues that his counsel was also ineffective for failing to object to the admission of the knife found during the search of his residence. As we discussed previously, Det. Hickey admitted during his cross-examination that the police were unable to determine whether the knife taken from Coots' home was the one used in the robbery.

However, even if defense counsel was deficient for failing to object to the admission of the knife, the State adduced sufficient admissible testimony at trial to support Coots' conviction for the charged offense of aggravated robbery. Meyers positively identified Coots as the individual who robbed her store. Surveillance videos outside the drive thru and an adjoining business recorded footage of Coots arriving at and leaving the drive thru at the time of the robbery. Sgt. Moore positively identified Coots as the individual depicted in the surveillance videos based on his physical mannerisms. Coots' car was identified as the motor vehicle that the perpetrator arrived in and fled in after the robbery occurred. The evidence also established that a call was placed from Coots' cell phone to a telephone at the drive thru moments before the robbery occurred. Sgt. Moore identified Coots' voice on a jail phone call recording wherein he made incriminating statements regarding the aggravated robbery.

{¶ 73} Lastly, prior to trial, defense counsel filed a motion in limine requesting that the trial court limit or bar the State from using the testimony of Sgt. Moore to identify Coots from surveillance videos or still photographs, but this motion was ultimately denied. Furthermore, there was no pre-trial identification procedure to move to exclude. The evidence of Coots' guilt was substantial. The admission of the knife, while ostensibly prejudicial, did not affect the outcome of the trial. Simply put, Coots has failed to establish that but for counsel's deficient performance, the result of the trial would have been different.

{¶ 74} Coots' sixth assignment of error is overruled.

{¶ 75} Coots' seventh and final assignment of error is as follows:

{¶ 76} "THE TRIAL COURT JUDGMENT SENTENCING APPELLANT TO

THE MAXIMUM TERM OF ELEVEN YEARS IS CLEARLY AND CONVINCINGLY CONTRARY TO LAW."

{¶ 77}  In his final assignment, Coots argues that the trial court erred when it sentenced him to the maximum term of eleven years in prison after he was convicted of aggravated robbery.

{¶ 78}  We note that pursuant to R.C. 2911.01(A)(1), aggravated robbery (deadly weapon) is a felony of the first degree.  Pursuant to R.C. 2929.14(A)(1), the basic prison term for a felony of the first degree *shall* be three, four, five, six, seven, eight, nine, ten, or eleven years.

{¶ 79}  "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A).

{¶ 80}  "[I]n *State v. Barker,* Montgomery App. No. 22779, 2009-Ohio-3511, at ¶ 36-37, we stated:

" '[I]n exercising its discretion the trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and 2929.12. *State v. Mathis*, 109 Ohio St.3d 54, * * * 2006-Ohio-855, at ¶ 37.'" *State v. Ulrich*, 2d Dist. Montgomery No. 23737, 2011-Ohio-758, at ¶ 20-21.  "[E]ven if there is no specific mention of [R.C. 2929.11 and R.C. 2929.12], 'it is presumed that the trial court gave proper consideration to those statutes.'" *State v. Hall*, 2d Dist. Clark No. 10-CA-23, 2011-Ohio-635, ¶ 51.

"'When reviewing felony sentences, an appellate court must first

31

determine whether the sentencing court complied with all applicable rules and statutes in imposing the sentence, including R.C. 2929.11 and 2929.12, in order to find whether the sentence is contrary to law. *State v. Kalish*, 120 Ohio St.3d 23, * * * , 2008-Ohio-4912. If the sentence is not clearly and convincingly contrary to law, the trial court's decision in imposing the term of imprisonment must be reviewed under an abuse of discretion standard. Id.'" *Ulrich*, at ¶ 22.

*State v. Bailey*, 2d Dist. Clark No. 2011-CA-40, 2012-Ohio-1569, ¶s 12-14.

**{¶ 81}** "'The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences.' *State v. Nelson*, 2d Dist. Montgomery No. 25026, 2012-Ohio-5797, ¶ 62. 'However, the trial court must comply with all applicable rules and statutes, including R.C. 2929.11 and R.C. 2929.12.' *Id*." *State v. Eicholtz*, 2d Dist. Clark No. 2012 CA 7, 2013-Ohio-302, ¶ 53.

**{¶ 82}** Pursuant to R.C. 2929.14(A)(1), Coots' sentence, while the maximum penalty, was clearly within the statutory range and thus, not contrary to law. Furthermore, in determining Coots' sentence, the trial court indicated that it considered the purposes and principles of felony sentencing. We note that the trial court specifically referenced the seriousness and recidivism factors during Coots' sentencing hearing and in his judgment entry of conviction. We also note that Coots' pre-sentence investigation report (PSI) established that he had an extensive history of misdemeanor and felony arrests and convictions. We have held, however, that "[a] trial court is not required to state that it

considered R.C. 2929.11 and R.C. 2929.12. Unless the sentence is contrary to law, a trial court is presumed to have considered them." *State v. Neff*, 2d Dist. Clark No. 2012-CA-31, 2012-Ohio-6047.

{¶ 83} Coots' seventh and final assignment of error is overruled.

{¶ 84} All of Coots' assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

WELBAUM, J., concurs.

FAIN, J., concurring in the judgment:

{¶ 85} I write separately merely to indicate that, in my view, a jury instruction on the lesser-included offense of Robbery was warranted by the evidence in the record in this case. Proof of the element of the use or brandishing of a deadly weapon in the commission of the offense was based on the victim's testimony that she recognized the handle protruding from Coots's waistband as the handle of a knife, together with Coots's act of displaying it when the victim refused to hand over the money. In my view, a reasonable jury could have found reasonable doubt as to whether a knife was actually used. Therefore, if Coots had preserved this issue for appellate review, I would be inclined to sustain his Fifth Assignment of Error.

{¶ 86} But Coots did not request an instruction on Robbery. Nor did he object to the trial court's failure to give that instruction. Therefore, he has forfeited all but plain error in this regard. Notice of plain error is to be taken "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v.*

*Thompson*, Slip Opinion No. 2014-Ohio-4751, ___ N.E.3d ___, ¶ 73, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of syllabus.

**{¶ 87}** In my view, the trial court's failure to have given a jury instruction on Robbery does not rise to the level of plain error. The evidence that a deadly weapon was used or brandished, while not overwhelming in my opinion, was substantial. Therefore, the likelihood is not great that a jury, appropriately instructed, would have found Coots not guilty of Aggravated Robbery, but guilty of Robbery. Furthermore, in determining whether notice of plain error is necessary to prevent a manifest miscarriage of justice, I deem it appropriate to consider a criminal defendant's strategic decision not to seek an instruction on a lesser-included offense, in the hope of winning an outright acquittal.[3]

**{¶ 88}** So I also would overrule Coots's Fifth Assignment of Error. In all other respects, I concur in Judge Donovan's opinion for the court.

. . . . . . . . . .

Copies mailed to:

Paul M. Watkins
Robert L. Mues
A. Mark Segreti, Jr.
Hon. Christopher Gee

---

[3]I recognize that the trial court has the power, and arguably the duty, to give an instruction on a lesser-included offense, where warranted by the evidence, notwithstanding a defendant's decision not to seek one. And if there were a great likelihood that the result would have been otherwise if the instruction had been given, plain error should be found. Nevertheless, a defendant's decision not to seek an instruction on a lesser-included offense may inform the calculation whether notice of plain error is necessary to correct manifest injustice.